Well, our third and final case this morning, 20-1031 Rivera vs. Exeter Finance. Mr. Brown, you may proceed. Thank you, Your Honor. And may it please the court, I would like to reserve three minutes for rebuttal if the court should allow. I represent Mr. Rivera, who was the appellant here, was the plaintiff down below. Mr. Rivera's motion for class certification, his second motion for class certification, was denied. And in denying that motion, Chief Judge Brimmer committed two reversible errors. The first one was that he did not address any of the Rule 23 factors in rendering his decision. And as the Supreme Court has said, numerous times, and this Court has said several times, the rigorous analysis of Rule 23 factors is the sine qua non of the class certification analysis and must be done. The second error was his basis for denying class certification was that the class was not ascertainable. And in reaching that conclusion, he applied the wrong legal standard. That is, he applied the Third Circuit's ascertainability standard, which the Third Circuit has created a requirement of administrative feasibility. But what evidence do we have in the district court's ruling that it applied that standard? In the order on the second motion for class certification, Chief Judge Brimmer wrote that the plaintiff had not shown that the class was ascertainable. And then he cited to the Donica case. We have citations to that heightened requirement, but in its verbiage, the court did not identify that requirement or address it. Is that not true? The court did not state that it was applying that standard. That is true. And in fact, the court did not say what standard it was applying. All that we can discern from that order is the citation to the Donica case and the page site, as well as the quotation. All of that, if you look to the Donica case, is a reference to the ascertainability requirement as stated by the Third Circuit in the Carrera case, which is the administrative feasibility requirement. So that's the reason or the basis for the argument that he applied the wrong standard. There is no indication that he applied it. You argued below, though, that a class needed to be ascertainable as sort of a foundation principle, didn't you? Your Honor, that is correct. And in fact, if you look at the motion for class certification, the second motion for ascertainability. Now, plaintiffs are not saying, an appellant is not saying here, that ascertainability is not a requirement. The question is, how is ascertainability established? And what is it in Rule 23 that makes ascertainability a requirement? Because remember, this has to be based on Rule 23 in the rigorous analysis. So what you see in that second motion for class certification is the plaintiff appellant there saying, we acknowledge, Your Honor, your ruling in our first motion for class certification, wherein you indicated to us that we needed to have an ascertainable class. So his order in response to the first motion for class certification indicated, in fact stated, that an ascertainable class was required. Plaintiffs responded to that. If you figure out what the class is, how can you apply the Rule 23 factors? That is absolutely reasonable, Your Honor. And in fact, in Rule 23, at 23C, I believe, the court is required to include a class definition. And I think that's what the ascertainability requirement is referring to. What is the class definition here? Well, the class definition in this motion, the class was defined as those 482 persons. Now, that's what's the cart before the horse, isn't it? It is not, Your Honor. How did those 400 plus people get into the class? Well, there is a detailed discussion of it in the briefing. But essentially what happened was the plaintiff was able to identify a few hundred thousand people who were called by Exeter Finance. And then the plaintiff subpoenaed records from AT&T and was able to put those two sets of records together and come up with a list of about 2,000 people. Now, there were some people that needed to be excluded. For example, people who were already customers of Exeter Finance could not be in the class because those people ostensibly gave Exeter Finance permission to contact them. So there was a process involved in which plaintiff's counsel did their level best to come up with the list of people who were appropriately in the class and submit that list to the court. Let me restate my question. What is the definition of the class here? Well, the class, if you're looking for objective criteria to define the class. I'm looking for a definition that I can put in an opinion. Well, it was submitted as an exhibit. So the opinion, the order could refer to the exhibit. And that has happened before. It could be defined in a number of different ways if you want to use objective criteria. For example, you could say individuals who received phone calls from Exeter Finance that were not previously customers of Exeter Finance as a result of their robocalling system. I guess I'm just I'm looking for what you asked the district court to certify. What what class definition did you propose to Judge Brummer? In the first motion for class certification, plaintiffs used a traditional definition for class certification, and it was essentially those individuals who received the unwanted calls from this auto dialing system by Exeter and who Exeter was trying to reach a prior subscriber to that number. Because you'll recall that that the persons receiving these unwanted calls have numbers that had previously been Exeter Finance customer numbers. And what what's the number of people that would fit into that class? What was the number? That original number was something just north of 800. All right. So what what is it in a definition that would cut out three to four hundred? That's that's a good question, Your Honor. And what happened was in the context of that first motion for class certification, Defendant Eppley pointed out several individuals who were include who would be included, but actually, in fact, could not be class members because, for example, the the person who had the phone number before them was not a subscriber to AT&T's service. And it turned out that the plaintiff himself suffered from that factual defect in that the person who had the number before him was not a subscriber to AT&T. He was an AT&T customer who had a prepaid phone service number. So the effect of it all was the same. But because of the way the were going to fall out of the class. Defendant pointed that out at the motion and the judge refused to to grant that motion because it found that the plaintiff himself was not a member of that class for that very reason, that that the person who had the number before him was a prepaid AT&T customer, not a subscriber. So are you saying that the three to four hundred that dropped out between the the first motion and the second motion were all people who were situated, such as Ms. Romero, the previous person who gave consent on this? No, I'm saying there were a number of factors that they used, the plaintiff's counsel used to eliminate individuals who ran the risk of being not appropriate class members. There were some other factors involved. For example, if it was a number to a business, the TCPA will not apply to businesses who receive auto dialer calls such as that. So they eliminated those numbers too. So there were a number of factors involved to just ensure that the individuals they were identifying were in fact appropriate class members. Does the list now include only AT&T customers? Yes. Surely there must be other customers of Verizon, Sprint and others that are not on this list. Absolutely, Your Honor. That's an assumption that we can make. Class discovery was permitted on this issue and plaintiffs served a subpoena on AT&T. I think the course question is a good one, but remember that there will never be a complete list of class members. There's always going to be people who could be in the class who are not. For example, we don't know all the phone companies that people who had agreements with Exeter Finance used. But in your previous motion, you did consider users of other providers, didn't you? No, it was based entirely on AT&T. And Your Honor, let me make this point if I may, because I see that I'm running out of time. The process that plaintiffs counsel went through here is not unusual. The timing of it is unusual, but this is the same process that happens in every class action when there's a judgment or a settlement and it's time to distribute the money. Mr. Brown, I have not seen a case where the class is defined just by a list. There are plenty of cases where once you define the class in the Queen's English textually, then you come up with a list of how many people fit in. Isn't that what you're talking about? Yes, traditionally that is how it happens. And that's a completely different thing than we have here. But I want to ask you, is part of the problem here that you have an opt-out class rather than an opt-in class? I don't believe that presents any problem whatsoever, Your Honor, and maybe I'm not understanding your question. But would you be able to proceed with this if you proceed with an opt-in class? Well, the motion was brought under 23B3, which is an opt-out. My question is, could you proceed in this case with an opt-in class? Are you saying would I or could I? Could you? I imagine that you could. The statute doesn't provide for an opt-in class, so I'm not sure how that would work. Well, there are plenty of class actions that are opt-in classes, aren't there? Sure, there are. Most class actions that are opt-in classes, though, are opt-in because the statute says that they need to opt-in. So I think, at least in my practice, the sort of default has been an opt-out class unless you're required to do an opt-in class. Can you respond quickly to the point that based on your methodology, your client is not a member of the class? Sure, and that's an interesting point because obviously the methodology that was done in the first motion, that was true. The methodology applied in the second motion, that's not accurate because for the first point being that obviously he falls within the 482. But second of all, nobody doubts factually that Mr. Rivera received these calls and that Mr. Rivera should not have received these calls because he was never an Exeter customer. Nobody is stating that the rest of the 481 did not receive these calls or that they should have received these calls. So they all are similarly situated in all the important factors about this So having said all that, the argument that he is not appropriately considered a member of the class is really, by the way, one of typicality. What counsel is raising is the idea that under a traditional 23 analysis, the claims of Mr. Rivera are not typical of the rest of the class's claims or that he is subject to a unique defense that the rest of the class is not subject to. So had the court done that traditional rule 23 analysis, we could have litigated that issue and come to some resolution of it. But that didn't happen here. I see my time is up, Your Honor. Thank you, counsel. Let's hear from Mr. Ramey. May it please the court. Travis Ramey on behalf of Exeter Finance. Mr. Rivera has twice sought to certify a TCPA class action against Exeter. His second motion to certify in this appeal, depending on which definition, is more useful at a given moment. Mr. Rivera has defined the class as solely a list of names or by referring to these sort of ill-defined and at least partially subjective methods of filtering records. Under either of those class definitions, the district court acted within its discretion when it denied class certification. If the class is only a list of 482 names, then the plaintiff has really provided no class certification. That may be so. But the class is clearly ascertainable, isn't it? I mean, it's ascertainable. You look at the list. You ascertain what the class is. Doesn't that mean the problem is something different than ascertainability? Well, I would have, I guess, three responses to that, Judge Murphy. The first is that, of course, the court can affirm for an alternative basis if it decides to. The second is that the need to define class, an ascertainable class, is about more than the ability to count noses. It's also about allowing the trial court to evaluate the explicit requirements of Rule 23 and helping ensure that the class functions as a true Rule 23 class. My third response would be to say that... Okay, so you're talking about commonality. You're talking about those factors, right? Well, the need for a sufficiently definite and ascertainable class definition, Neuberg on class actions has called this a precursor to the ability to do the express analysis of the Rule 23a and Rule 23b requirements. If you don't have a real class definition, it's not possible to do that express analysis. Wait a minute. You have this list, and inquiry can be made of everybody on this list. First of all, I know it's numerous. It embarrasses the questions of law by who was included or common to each of them, and that their claims are typical, and that there's commonality. Can't you do that just by checking the people on the list? Well, Judge Murphy, I think that Rule 23c1 and 2 provide a yardstick for what a class definition has to include in a list of names, even if it's possible to count noses, something that the district court acknowledged was true. It doesn't provide the type of definition that we use to define what is a class. It's just a list of individuals. I also think it's important to note that the district court's order is about more than just, can we figure out who the individuals in this class are? Yes, the judge mentioned that, but he also talked about how this list had been reached through a process that included subjective analysis. He was concerned about the accuracy of the list that had been generated by this analysis, whether it was reliable. He had other concerns that were just about a class definition more generally, about how the class was defined by the only common characteristic being presence on the list, which is not a personal characteristic that the type of criterion used to generate the type of criterion of being on a list is not the type of criteria we typically use. But can't you tell from the criteria that was used to narrow this list down from the list in the first motion that that criteria narrows this down to people who basically had not consented to receive calls and that they received it, they had no relationship with Exeter. They received it on this phone number. Well, Judge Murphy, I think there's sort of five problems with creating a class from the criterion. The first of which is that the plaintiff has in his opening argument made that same insistence and the district court might have been able to cobble together some definition from that possibly, but that's not really the district court's job to do that. The second problem is looking at just these criteria. If that's what defines the class, then Mr. Rivera isn't part of the class. He fails at four separate parts of the criteria. If you just stop with the two criteria that Judge Murphy's listed, he would be part of the class, would he not? He received calls and he had no prior relationship with Exeter, period. Your Honor, that's I assume correct. But if you look at the Walmart v. Duke's case, it touches on a bit of what Mr. Rivera's argument here, which is that he is in the class because he possesses the same interests and he suffered the same injury. But the Duke's case says there are three separate parts. That's two of the three. But the third is that they must be part of the class. So that's a separate requirement that he be included within the definition. Now, if the idea again is that the district court maybe could have cobbled something together from the various pleadings, maybe, but that doesn't fix the rest of the problems, which is that these criterion that were used to create this list of 482 aren't clearly defined. There's no statement of what system dispositions were used to come up with the four bad number results. It doesn't say what commercial database was used to check these numbers. The district court really didn't have enough information to glean these parameters itself, and it really wasn't its job to do so. And that's separated apart from the evidentiary problem that Mr. McDevitt, whose declaration is the basis, is not a qualified expert. And the second motion added new criteria to filter that list down and was not supported by a new declaration to do so. It's supported simply by records. That's the second problem. The third problem, these parameters, some of them are subjective. And we know that an ascertainable class must be ascertainable based on reference to objective factors. Give me an example of something that was eliminated by a subjective criteria. Okay. An example of one of the subjective factors. Is a name or address similar? Is name or address information inadequate? Judge Murphy, you and I might come to very different conclusions about whether two names are similar. Well, that's a judgment decision. Wait a minute. You're talking about... I don't think Rule 23 requires absolute precise numbers. You don't have any mistakes. You don't have any mistakes of underrepresentation or overrepresentation. It can't be perfect. Clearly, what that criteria was intended to do was, for example, to get rid of people who are on a family plan. Isn't that correct? Judge Murphy, I can surmise that maybe that was the intent. But the problem is part of this requirement to have ascertainability be about an objective in reference to criteria that are subjective criteria. Especially when it's simply based on records. The plaintiff and the district court should reach the same conclusion. The plaintiff's work should be recreatable. And here that simply isn't possible because we don't know what judgment Mr. McDevitt exercised when he decided whether something was or was not similar. When he decided whether something was or was not conceivable. Well, you could reverse engineer it, couldn't you, and figure that out from figuring out what's the commonality of the three or four hundred people who were excluded from the first one? Your Honor, given the lack of any real definition other than a class, I don't know that you can do that analysis. Particularly, it's also important. This was plaintiff's burden to put on evidence showing not that this was conceivably possible, but that it was effectively done by a preponderance of the evidence. And this just doesn't get there. There's another problem with this class, and Judge Murphy, you touched on it a bit in my friend's argument, and that is this class is fatally under-inclusive in its own definition. It doesn't include anyone that's an AT&T customer. It's based only on a partial analysis of Exeter's records. Well, go on. Okay, I can understand. You can put the subclasses if you want to. So, right now we have the subclass of AT&T people. What is under-inclusive about it? Well, it's based only on a partial analysis of Exeter's records. The initial database was only about half of Exeter's records. So, we're already leaving out maybe half of AT&T's customers to begin with. We have 840 class members at the first motion for class certification that Mr. Rivera represented were necessarily part of the class. And now, through the sort of additional filtration, we've gone from 840 to 481. What is the problem with under-representation? You're not going to preclude those people if they don't opt out because they're not on the list. So, what's the problem with under-representation? Well, at a certain point, and I think we've reached that point, Judge Murphy, under-inclusiveness defeats the efficiency purposes of Rule 23. The point of allowing class discovery is so that the plaintiff can prove the initial class allegations. And yes, you can deviate, and yes, you can filter that class down and minimize it. But at this point, Exeter has engaged in a long, protracted discovery process involving thousands of accounts. And to get down to this point of 480 cases, Exeter will have spent all of this time, the court will have all this time to adjudicate this, and yet only a sliver of the hypothetical potential cases out there will have ever been resolved. That's not the efficient process, Rule 23. Mr. Ramey, aren't what you're saying is if there are some serious problems with this class, that it should not be certified? But they are reasons other than determinability. Isn't that what you're saying now? I'm not saying that. No, I... Judge Murphy, I think that the deficiencies of the class definition are on its face, problematic. And it's not just a problem of superiority or typicality. It is a problem, it was like the problems that were identified by the district court in its work. You have a class that isn't really a class, that has been defined by non-traditional methods in a non-traditional way, that is based on subjective factors, that is a list of people whose only common characteristic is their presence on the list, that is perhaps more suitable for an opt-in if such a procedure exists in class, than it is the opt-out Rule 23 procedure. And all of that is apparent directly on the face of the definition without getting into the specific Rule 23 factors, or elements, excuse me. And the other part, Judge Murphy, we all know that the individual Rule 23a requirements and the Rule 23b requirements, these aren't silos, they overlap, just like the requirement for a class definition and ascertainability overlap. And given that this definition is apparently defective on its face, given the potentials for abuse of allowing a class to be defined simply by a list of names, and the possibility of doing exactly what happened here, file a broad class, and then winnow it down through phishing discovery, it's problematic. It also allows what ultimately this class definition is about. It's an attempt to bypass the problem that was present in the initial motion for class certification, which is that Mr. Rivera does not fit the class definition. This list is an attempt to tack Mr. Rivera onto what hypothetically could perhaps, if it were better defined, be a class, but would not include Mr. Rivera. If I could ask one question. Did the district court in this case apply heightened ascertainability? Mr. Chief Judge, my time has expired. If I might have a lead to answer. Please answer the question. Your Honor, there's no indication that the district court implied the heightened ascertainability administrative feasibility requirement from the Third Circuit. It never once discussed administrative feasibility. It didn't even really say that the identity of the individuals would be difficult or impossible to identify. It did cite at various points to the Donica case, and I think there may have been citations to Carrera and Warnick, but it didn't discuss everything in those cases. And simply the fact that it cited to some cases that applied the administrative feasibility requirement does not mean that the district court applied that requirement, particularly when there's no other evidence that it did. We'd ask that the court affirm. Thank you, counsel. Your time has expired. Absent any further questions, counsel are excused, and the case shall be submitted. Thank you, counsel.